**U.S. COURT OF APPEALS CASE NOS. 12-17502, 12-17519,
12-17595, 13-15407, 13-15473**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————

FIFTY-SIX HOPE ROAD MUSIC LIMITED AND ZION ROOTSWEAR, LLC

*Plaintiffs-Appellees and Cross-Appellants,*

v.

A.V.E.L.A., INC., X ONE X MOVIE ARCHIVE, INC., LEO VALENCIA,
CENTRAL MILLS, INC. (FREEZE), AND JEM SPORTSWEAR, INC.

*Defendants-Appellants and Cross-Appellees.*

———————

**PLAINTIFFS-APPELLEES/CROSS APPELLANTS FIFTY-SIX HOPE
ROAD MUSIC LTD.'S AND ZION ROOTSWEAR, LLC'S FOURTH BRIEF
ON CROSS APPEAL**

———————

On Appeal From The United States District Court
For The Nevada District of California
District Court Case 2:08-cv-00105-PMP-GWF

———————

| | |
|---|---|
| SHEPPARD, MULLIN, RICHTER & HAMPTON LLP | GALLANT & ERVIN |
| Jill M. Pietrini (Cal. Bar No. 138335) | Timothy J. Ervin |
| Paul A. Bost (Cal. Bar No. 261531) | One Olde North Road, Suite 103 |
| 1901 Avenue of the Stars, Suite 1600 | Chelmsford, MA 01824 |
| Los Angeles, California 90067-6055 | TEL: (978) 256-6041 |
| TEL: (310) 228-3700 | |

*Attorneys for Plaintiff-Appellees/Cross-Appellant Fifty-Six Hope Road Music
Limited and Zion Rootswear, LLC*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................1

II.    PLAINTIFFS OWN A VIABLE NEVADA REGISTRATION OF BOB
       MARLEY'S RIGHT OF PUBLICITY ........................................2

III.   PLAINTIFFS ARE ENTITLED TO A JURY DETERMINATION OF
       DEFENDANTS' PROFITS.............................................................7

IV.    THE COURT ABUSED ITS DISCRETION IN ITS ACCOUNTING OF
       JEM'S PROFITS .............................................................................9

       A.    Plaintiffs' Entitlement to an Accounting of JEM's Profits is Not
             Conditioned on a Finding of Willfulness .................................9

       B.    The Court Abused its Discretion by Granting JEM Leave to Produce
             Evidence of Costs it Had Already Ruled Inadmissible Prior to Trial.10

       C.    JEM's GMISR is Unreliable and Flawed.............................12

       D.    The Court Abused its Discretion by Deducting JEM's Purported
             Retailer Discounts and Sales Commissions .........................13

V.     THE COURT ABUSED ITS DISCRETION BY NOT INCREASING
       PLAINTIFFS' AWARD OF DEFENDANTS' PROFITS...........15

VI.    THE COURT ERRED BY DENYING PLAINTIFFS' MOTION FOR
       ATTORNEYS' FEES AS TO JEM AND FREEZE ....................19

       A.    The Court Correctly Determined that Plaintiffs Were the
             Prevailing Party and that the Case Was Exceptional as to Jem
             and Freeze..............................................................................19

       B.    The Court Abused its Discretion by Holding that Certain
             Factors Mitigated Against an Award of Attorneys' Fees as to
             JEM And Freeze.....................................................................20

             1.    Attorneys' Fees Should Be Assessed Against JEM .................20

             2.    Attorneys' Fees Should Be Assessed Against Freeze .............24

VII.   THE COURT'S ENTRY OF JUDGMENT AS A MATTER OF LAW AS
       TO PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES WAS
       ERRONEOUS ...............................................................................26

VIII.  CONCLUSION................................................................................29

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Acosta v. City and County of San Francisco*, 83 F.3d 1143 (9th Cir. 1996).....26, 27

*Adidas America, Inc. v. Payless Shoesource, Inc.*, 546 F. Supp.2d 1029, 1087 (D. Or. 2008)......................................................................................7

*Adry v. Adry-Mart, Inc.*, 76 F.3d 984 (9th Cir. 1995) .............................................10

*ALPO Petfoods Inc. v. Ralston Purina Co.*, 778 F. Supp. 555 (D.D.C. 1991)........16

*AmBRIT Inc. v. Kraft Inc.*, 812 F.2d 1531 (11th Cir. 1986)....................................17

*Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168 (3d Cir. 2005)................................10

*Barnett v. U.S. Air., Inc.*, 228 F.3d 1105 (9th Cir. 2000) ..........................................6

*Boston Professional Hockey v. Dallas Cap & Emblem Manufacturing, Inc.*, 597 F.2d 71 (5th Cir. 1979) ....................................................................17

*Browning-Ferris Indus v. Kelco Disposal*, 492 U.S. 257, 109 S.Ct. 2902 (1989)....................................................................................................26

*C.f. Watec Co.v. Liu*, 403 F.3d 645 (9th Cir. 2005)..................................................20

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 2011 U.S. Dist. LEXIS 107083 (W.D. Wash. 2011).............................................23, 24

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 2014 U.S. App. LEXIS 1822 (9th Cir. 2014) .............................................................23

*Faberge, Inc. v. Saxony Prods., Inc.*, 605 F.2d 426 (9th Cir. 1979) ......................15

*Foster v. Arcata Associates, Inc.*, 772 F.2d 1453 (9th Cir. 1985)..........................11

*Fresh Del Monte Produce Inc. v. Del Monte Foods Co.*, 933 F. Supp.2d 655 (S.D.N.Y. 2013)............................................................................9

*Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103 (2d Cir. 1988) ........................................................................................17

*Gracie v. Gracie*, 217 F.3d 1060 (9th Cir. 2000) ....................................................20

*Hunting World, Inc. v. Reboans, Inc.*, 1994 U.S. Dist. LEXIS 19961, *15 (N.D. Cal. 1994)...........................................................................................7, 8

*Lindy Pen Co. v. Bic Pen Co.*, 982 F.2d 1400 (9th Cir. 1993) ...............................10

*Louis Vuitton S.A. v. Lee*, 875 F.2d 584 (7th Cir. 1989)........................................18

*Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117 (9th Cir. 1968) .................................................................................................8, 18

*Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 2008 WL 655604 (C.D. Cal. 2008).........................................................................................6

*Nat'l Steel Car, Ltd. v. Canadian Pac. Ry. Co.*, 254 F. Supp.2d 527 (E.D. Pa. 2003) ................................................................................................16

*Roth v. Naturally Vitamin Supplements, Inc.*, 2007 U.S. Dist. LEXIS 49379 (D. Ariz. 2007)........................................................................................24

*Saint John's Organic Farm v. Gem Cnty. Mosquito Abatement Dist.*, 574 F.3d 1054 (9th Cir. 2009) ...............................................................25, 26

*Saman v. Robbins*, 173 F.3d 1150 (9th Cir. 1999)...................................................26

*SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90 (2d Cir. 1977) ....................8

*SEC v. Rind*, 991 F.2d 1486 (9th Cir. 1993) ............................................................8

*SIL-FLO, Inc. v. SHFC, Inc.*, 917 F.2d 1507 (10th Cir. 1990)...............................11

*Skydive Arizona Inc. v. Quattrocchi*, 673 F.3d 1105 (9th Cir. 2012) ....................18

*T-Mobile USA Inc. v. Terry*, 862 F. Supp.2d 1121 (W.D. Wash. 2012) ................21

*Tamko Roofing Products, Inc. v. Ideal Roofing Company, Ltd.*, 282 F.3d 23 (1st Cir. 2002) .........................................................................................21

*Trafficschool.com, Inc. v. Edriver Inc.*, 653 F.3d 820 (9th Cir. 2011)........22, 25, 26

*U-Haul International, Inc. v. Lumberman's Mutual Casualty Co.*, 2007 WL 809989 (D. Ariz. 2007)........................................................................13

*Viskase Corp. v. American Nat'l Can Co.*, 261 F.3d 1316 (Fed. Cir. 2001) ...........11

*Waits v. Frito-Lay, Inc.*, 978 F.2d 1093 (9th Cir. 1992)..........................................24

<u>Statutes</u>

15 U.S.C. §§ 1114(1)(b), 1117(a), 1117 (b)(1), 1117(c)(2) ....................................10

15 U.S.C. § 1117(a) ...........................................................................................7, 8, 19

15 U.S.C. § 1117(a)(3).............................................................................................15

15 U.S.C. § 1117(b) ...................................................................................................8

15 U.S.C. § 1117: (a) .................................................................................................1

NRS § 11.190.3(a) .....................................................................................................5

NRS § 42.005.1 ........................................................................................................27

NRS § 597.770, *et seq.* .............................................................................................5

NRS § 597.780 ...........................................................................................................6

NRS § 597.800.4 ...............................................................................................2, 3, 4

NRS §§ 597.800.4 and 5 ............................................................................................3

NRS § 597.800(5) ......................................................................................................5

NRS § 597.800.5 ....................................................................................................2, 3

<u>Secondary Authorities</u>

Fed.R.Civ.P. 50(a).....................................................................................................28

Fed.R.Civ.P. 59 ........................................................................................................26

Fleming James Jr., *Burdens of Proof*, 47 Va. L. Rev. 51, 53 (1961) .....................27

## I.    INTRODUCTION

Plaintiffs Fifty-Six Hope Road Music Limited's ("Fifty-Six Hope Road") and Zion Rootswear, LLC's ("Zion") (collectively, "Plaintiffs") cross-appeal presents these errors for review.

1.    The trial court adopted an erroneous interpretation of Nevada's right of publicity statute advocated by Defendants,[1] which unjustifiably and forever strips Plaintiffs of their interest in Bob Marley's right of publicity.  The interpretation is at odds with the plain language and spirit of the statute, which is meant to confer, not eliminate, rights, and it entirely neuters the value and effectiveness of the right of publicity register created by the statute.

2.    The court made three errors on its accounting of Defendants' profits pursuant to 15 U.S.C. § 1117:  (a) by not allowing Plaintiffs a jury determination of Defendants' profits; (b) by allowing certain deductions of costs to JEM not established by reliable or admissible evidence; and (c) by not granting Plaintiffs' request for increased profits given the extent of Plaintiffs' injuries and considerations of deterrence.

3.    The court abused its discretion by denying Plaintiffs' motion for attorneys' fees as to JEM and Freeze.  At most, the court should have apportioned

---

[1]    Defendants A.V.E.L.A, Inc., Leo Valencia, and Sci-Fi Productions, Inc. dba X One X Movie Archive, Inc. (collectively, "AVELA") and defendants Central Mills, Inc. ("Freeze") and JEM Sportswear, Inc. ("JEM").

Plaintiffs' attorneys' fees between the Defendants according to their respective gains and levels of culpability.

4.     The trial court committed reversible error by granting Defendants' motion for judgment as a matter of law on Plaintiffs' claim for punitive damages on their intentional tort claim.

## II.    PLAINTIFFS OWN A VALID NEVADA REGISTRATION OF BOB MARLEY'S RIGHT OF PUBLICITY

Defendants advocated, and the court adopted, an unreasonable interpretation of Nevada's right of publicity statute that strips away the rights it was enacted to protect.  This Court should reverse and find that Plaintiffs own a viable Nevada registration of Bob Marley's right of publicity.

NRS § 597.800.5 is at the heart of this dispute.  Plaintiffs contend that the entire provision should be interpreted together, not arbitrarily divided into two separate sections, i.e., the first sentence and the final two sentences.  Construed as a whole, NRS § 597.800.5 describes and strikes a balance between the rights and responsibilities of users and claimants of rights of publicity.  Specifically, the provision requires prospective users to make a good faith effort to determine if anyone claims to be the decedent's successor in interest to rights in his name, voice, signature, photograph, or likeness ("Publicity Rights"), i.e., to review the Nevada register.  In the event the effort proves futile (no relevant rights are registered), the user is free to use the unregistered rights.  *See* NRS § 597.800.4.

Thereafter, any claimant in the unregistered rights has six months from the time it learned (or should have learned) of such use to register its claim. If it timely registers its rights, the claimant retains rights against the prior user for any *separate, new* uses of the Publicity Rights (not the uses preexisting its registration). If it does not timely register its rights, the claimant waives *any* rights of publicity it asserts against the user at issue (including separate, new uses).

In this context, it is clear that NRS § 597.800.5 does not stand for the proposition that by failing to timely register its claim, the claimant waives all Publicity Rights as to the world at large. Instead, the waiver is only to that particular user. Contrary to Defendants' argument otherwise, Plaintiffs' interpretation does not render NRS § 597.800.4 superfluous. Instead, the unauthorized activities immunized by NRS §§ 597.800.4 and 5 are distinguishable. NRS § 597.800.4 immunizes the specific infringement of a decedent's Publicity Rights that begins before registration (but not separate, new post-registration uses by that user). NRS § 597.800.5 immunizes all uses of all Publicity Rights by the specific user when the claimant does not timely register its claim. For example, if the user sells t-shirts with a celebrity's image and the celebrity's estate registers his Publicity Rights within six months, the celebrity's estate can enforce his Publicity Rights against the user, except for those t-shirts. If the celebrity's estate fails to register his Publicity Rights within six months of learning of the t-shirt seller, the

celebrity's estate can never sue the t-shirt seller for infringing his Publicity Rights in Nevada.

Nevada's right of publicity statute must be read and interpreted in light of the purposes for which it was enacted.  The statute's legislative history makes it clear that the statute was enacted to enshrine an individual's right of publicity and require his successor in interest's permission before making commercial use of the same, with a carve out for impressions or portrayals of a celebrity in a live performance, a staple of Las Vegas nightlife.  (Supp. ER 21-52.)  Clearly, the statute was enacted for the protection of a celebrity's rights, a purpose not reflected in the court's interpretation.

Defendants contend that Plaintiffs' interpretation will result in a parade of horribles.  None of Defendants' fears has any basis.  Defendants argue that under Plaintiffs' interpretation, potential unauthorized users will not be able to use a decedent's Publicity Rights in reasonable reliance on the absence of a registration, but, instead, can be ambushed by a claimant.  According to Defendants, a claimant could refuse to register its rights despite being aware of various ongoing authorized uses, but nevertheless enforce its rights against a particular unauthorized user as long as the claimant registered its rights within six months of the unauthorized user's use.  This is simply not true.  Any such use is immunized by NRS § 597.800.4 because it began "before the filing of an application to register his or her

-4-

claim." Upon learning of any such use, the claimant has six months to register its claim, failing which, pursuant to NRS § 597.800(5), it waives all rights as to that particular user. Quite simply, Plaintiffs' interpretation does not allow claimants to "lay in wait" as Defendants allege.

On the contrary, it is the trial court's interpretation that will result in injustice and confusion. Although JEM refers to the six-month window for registration as "merely a garden-variety of statute of limitations," it is far from that. (JEM's Third Brief on Cross-Appeal, p. 6.) Unlike a statute of limitations which limits the time to assert rights with respect to *an* alleged violation, Defendants' interpretation operates to surrender all rights to all users. Also, claims under NRS § 597.770, *et seq.* already have a statute of limitations of three years set by NRS § 11.190.3(a). Under Defendants' interpretation, a claimant forever surrenders all Publicity Rights to all users if it has knowledge of an insignificant, one-time unauthorized use occurring six months prior to registration. Every lawsuit raising a claim under NRS § 597.770, *et seq.* will be a contest to determine if the deceased celebrity's Publicity Rights were ever used without authorization six months before registration, no matter how small. Under Defendants' interpretation, the register of claimed publicity rights will be replete with deadwood – i.e., registrations that are potentially invalid due to <u>one</u> prior unauthorized use by

anyone – and, thus, will not operate as a system by which claimants can give notice of their claimed rights.

Finally, JEM waived any argument that the Nevada right of publicity statute does not extend to persons who died before its enactment.  The court specifically held otherwise and JEM never appealed this decision.  (ER 59-61.)  By not raising this issue in its opening brief, JEM waived its right to appeal the court's holding that the Nevada right of publicity protects the rights of persons who died before its enactment.  *See Barnett v. U.S. Air., Inc.*, 228 F.3d 1105, 1111, n.1 (9th Cir. 2000) ("the law of this circuit is that issues not raised in a party's opening brief are waived.")  The statute applies to "any commercial use within this state of a living or deceased person's name, voice, signature, photograph or likeness regardless of the person's domicile."   NRS § 597.780.  The statute applied to deceased persons upon enactment, meaning it applied to persons who died before enactment.  This is supported by the legislative history, which discussed the impact the bill would have on the Publicity Rights in the already deceased Orson Welles and Liberace. Mins. of the S. Comm. on Commerce & Labor, 65th Sess. June 2, 1989.  Although California's right of publicity statute added language specifically applying it to celebrities dead before its enactment, this was intended to be a clarification of the previous statute, not an amendment of it.  *See Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 2008 WL 655604, *2 (C.D. Cal. 2008).

### III.    PLAINTIFFS ARE ENTITLED TO A JURY DETERMINATION OF DEFENDANTS' PROFITS

Defendants have not identified any cases holding that a plaintiff does not have a right to jury determination of an accounting pursuant to 15 U.S.C. § 1117(a).  On the contrary, Plaintiffs have cited to numerous cases within this Circuit plainly holding otherwise.  JEM's efforts to distinguish them as "actual damages" cases, not accounting cases, are unavailing.  In *Adidas America, Inc. v. Payless Shoesource, Inc.*, the court ruled that even though plaintiff had presented evidence of actual injury, that was irrelevant as, "<u>in any event</u>, [the Supreme Court] has held that a claim for an accounting of profits in a trademark infringement action is a <u>legal claim</u> for relief, and thus <u>gives rise to a right to a trial by jury</u>."  546 F. Supp.2d 1029, 1087 (D. Or. 2008) (emphasis added).  In other words, the plaintiff was entitled to have a jury decide the accounting regardless of whether the plaintiff could prove actual injury.

Likewise, in *Hunting World, Inc. v. Reboans, Inc.*, the court held that "remedies under [15 U.S.C. § 1117(a)] are not penalties, but are instead part of the traditional substance of the common-law right to trial by jury."  1994 U.S. Dist. LEXIS 19961, *15 (N.D. Cal. 1994).  It is undisputed that Plaintiffs' accounting remedy falls under 15 U.S.C. § 1117(a).  Nevertheless, JEM argues the *Hunting World* opinion supports its position because the court therein draws a bright line as to the right to jury trial between innocent and willful infringements of the Lanham

-7-

Act. This is incorrect. The court in *Hunting World* drew a bright line between the remedies provided in 15 U.S.C. § 1117(a) and the mandatory, "punitive" remedies for intentional counterfeiting provided in 15 U.S.C. § 1117(b); parties seeking relief under the former have an absolute right to trial by jury, but no such right for relief under the latter. *Id*. That the jury found Defendants' infringement to be willful does not convert the accounting under 15 U.S.C. § 1117(a) into a penalty, much less into an award under § 1117(b).[2] By JEM's reasoning, whether a jury has province over an accounting depends upon the scienter of the infringer, an absurd result.

In support of its position, JEM cites two cases holding that the SEC's right to seek disgorgement is a component of its "power to obtain injunctive relief" and restitution. *SEC v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993); *see also SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 96 (2d Cir. 1977). An accounting in the context of an SEC enforcement action is not analogous to a claim for accounting under 15 U.S.C. § 1117(a). While an accounting under 15 U.S.C. § 1117(a) may implicate issues of restitution and unjust enrichment, it is still a compensatory form of relief. In *Maier Brewing Co. v. Fleischmann Distilling*

---

[2]     A finding of willfulness supports, but is not a condition precedent to, the imposition of an accounting. Even if, as JEM contends, the court's accounting award was premised upon the jury's finding of willfulness, that still does not mean the award was fundamentally "punitive."

*Corp.*, 390 F.2d 117, 120-23 (9th Cir. 1968), this Court recognized the multiple objectives inherent in an award of profits, i.e., as an approximation of lost sales, to account for damage to goodwill, to cure unjust enrichment, and to deter future infringement. *See also Fresh Del Monte Produce Inc. v. Del Monte Foods Co.*, 933 F. Supp.2d 655, 664 (S.D.N.Y. 2013) ("[defendant's] argument also misapprehends the very reason the Lanham Act authorizes an accounting of the defendant's profits: the difficulty of proving that a plaintiff has lost sales due to a defendant's false advertising. The verdict here belies any suggestion that [plaintiff] could easily prove the quantum of lost sales, let alone the harm flowing from loss of good will or market share.") Plaintiffs and Defendants are competing licensors and licensees, as evidenced by Plaintiffs' success on its intentional tort claim. Defendants' profits constitute a "rough measure" of Plaintiffs' damages, *Id*., and it is therefore compensatory.

## IV. THE COURT ABUSED ITS DISCRETION IN ITS ACCOUNTING OF JEM'S PROFITS

### A. Plaintiffs' Entitlement to an Accounting of JEM's Profits is Not Conditioned on a Finding of Willfulness

JEM argues Plaintiffs are not entitled to an accounting of its profits because its infringement was not willful. First, the jury verdict stated that JEM willfully infringed Plaintiffs' rights, and the trial court concurred with that finding. (ER 243). Second, a finding of willful infringement is not a condition of

disgorgement of profits. In addition to the authorities previously cited by Plaintiffs, this is supported by the plain language of the Lanham Act, which distinguishes remedies that are only available for "willful" and "intentional" dilution and counterfeiting. *See* 15 U.S.C. §§ 1114(1)(b), 1117(a), 1117 (b)(1), 1117(c)(2). The cases cited by Defendants – *Adry v. Adry-Mart, Inc.*, 76 F.3d 984 (9th Cir. 1995) and *Lindy Pen Co. v. Bic Pen Co.*, 982 F.2d 1400 (9th Cir. 1993) – were decided before the 1999 amendment to the Lanham Act which clarified the claims where willfulness was a condition to an award of profits. *See Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 174 (3d Cir. 2005) ("The plain language of the amendment indicates that Congress intended to condition monetary awards for § 43(c) violations, but not § 43(a) violations, on a showing of willfulness.") Furthermore, both cases expressly note that willfulness is not necessary when the parties are competitors (*Lindy Pen*, 982 F.2d at 1405; *Adry*, 76 F.3d at 988), and neither case accounts for situations such as the present where Defendants' profits represent both a measure of Plaintiffs' damages – given the parties' competitive distance – and unjust enrichment.

**B.    The Court Abused its Discretion by Allowing JEM to Produce Evidence of Costs it Had Already Ruled Inadmissible Before Trial**

In its order granting Plaintiffs' Third Motion in Limine, the court clearly precluded JEM "from presenting evidence of or related to [its] costs of . . . producing and selling Marley apparel and merchandise to the extent that said

Defendants fail to produce evidence of such costs during discovery conducted in this case." (ER 935.) JEM represents that it first produced its Gross Margin Invoice Summary Register ("GMISR") during discovery, but this is incorrect. JEM first produced the GMISR and a witness to testify to its costs on or around March 1, 2010, more than 5 months <u>after</u> discovery closed on September 23, 2009. The purpose and intent of the court's order was to preclude JEM from using the GMISR at trial because it had failed to timely produce it to Plaintiffs.

After issuing the order and denying JEM's motion to bifurcate liability and damages, the trial court abused its discretion by re-opening discovery after the Jury rendered its verdict of willful infringement. Although the court has latitude in controlling discovery, the authorities cited by JEM do not establish that the court's discretion is so wide as to countenance the orders in question. *See Foster v. Arcata Associates, Inc.*, 772 F.2d 1453, 1467 (9th Cir. 1985) (appellant's contention that the court abused its discretion by proceeding to summary judgment when discovery had not been completed was precluded by appellant's failure to avail itself of FRCP 56(f)); *SIL-FLO, Inc. v. SHFC, Inc.*, 917 F.2d 1507, 1514 (10th Cir. 1990) (examining a court's discretion to deny a motion to re-open discovery *prior* to trial). This is not a situation where discovery was ordered based on the post-trial unearthing of prior unknown facts. *See Viskase Corp. v. American Nat'l Can Co.*, 261 F.3d 1316, 1324 (Fed. Cir. 2001) (describing post-trial discovery as "an

unusual event, flowing from new information.")  Instead, Plaintiffs sought

discovery of JEM's costs during pre-trial discovery; JEM had this information but

chose not to timely disclose it.  The court abused its discretion by effectively

overruling its prior decisions after trial.

### C.    JEM's GMISR is Unreliable and Flawed

Even if the admissibility of the GMISR is more appropriately analyzed

under FRE 803(6) than FRE 1006, the court still erred in ruling it admissible under

this hearsay exception.  FRE 803(6) expressly conditions admissibility on "neither

the source of information nor the method or circumstances of preparation

indicat[ing] a lack of trustworthiness."  Plaintiffs have identified a number of

discrepancies between the GMISR and other non-summary financial documents

produced by JEM going to heart of the GMISR's accuracy and comprehensiveness.

JEM summarily contends that these "alleged inaccuracies . . . were addressed by

competent evidence submitted in the trial court."  (JEM's Third Brief on Cross

Appeal, p. 14.)  This is not so.  Furthermore, JEM has never elicited evidence –

testimonial or otherwise – even addressing the GMISR's underreporting of sales of

a particular t-shirt to Wet Seal by 5,000 units and $26,250.  (ER 139.)  Finally, if

the Court upholds the trial court's ruling that the GMISR is admissible and

reliable, it should, at least, remand for a re-assessment of JEM's profits to include

the unaccounted revenue from Wet Seal.

**D.    The Court Abused its Discretion by Deducting JEM's Purported Retailer Discounts and Sales Commissions**

The GMISR and JEM's summaries of retailer discounts and sales commissions are fundamentally different animals.  JEM's summaries of allowances and sales commissions were prepared by its controller for the purposes of litigation from documents that JEM never made available to Plaintiffs, i.e., invoices, remittance advices, and commission checks/payments.  These litigation summaries are distinguishable from computer printouts of business records, i.e., "an original computer data compilation . . . prepared pursuant to a business duty in accordance with regular business practice."  *U-Haul International, Inc. v. Lumberman's Mutual Casualty Co.*, 2007 WL 809989, *6 (D. Ariz. 2007), *citing Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632 (2d Cir. 1994).  JEM's controller reached the $72,989.64 retailer discount amount by multiplying JEM's total sales to the relevant retailers by their respective rebates.  As for the sales commissions of $130,271.47, JEM's controller simply stated that she "calculated" them, without any further detail.  There is no evidence that JEM's controller actually confirmed that the retailer discounts were applied, or that the sales commissions were paid.  These summaries do not have the indicia of reliability of a computer printout culling data records of regularly conducted activity.  Accordingly, these summaries are inadmissible hearsay and/or inadmissible pursuant to FRE 1006 (allowing a summary of voluminous writings

-13-

only if the documents underlying the summary are made available for examination and copying).

Likewise, JEM's controller's testimony as to the alleged costs is not reliable. Specifically as to the retailer allowances, JEM has not presented any evidence – much less substantial evidence – establishing that the conditions precedent to certain of the alleged allowances and discounts were fulfilled and, thus, the discounts were applicable.  For example, JEM's agreements with Kohls and Bealls both call for a 5% discount on "all new store gross cost orders defined as initial orders, flow back orders and the new store portion of bulk orders delivered within 30 days of grand opening."  (JEM's Supplemental ER 167, 172.)  Similarly, JEM's agreement with Target calls for a 2% discount IF the invoice is paid by Target within 60 days.  (JEM's Supplemental ER 173.)  JEM submitted no evidence to meet these condition precedents for the retailer allowances.  JEM's controller's simple multiplication of its sales by each retailer's rebate percentage is not reliable.

As to sales commissions, JEM's controller does not identify the documents she reviewed to calculate the sale commissions or how she calculated these amounts.  JEM only provided the contract of one of its non-employee sales representatives, Tom Hancock.  It did not provide the contracts for Krista Layton or any of its in-house sales employees.

-14-

Finally, JEM admits that it <u>never</u> produced evidence of the above alleged costs – totaling $203,261.11 – prior to trial, much less during discovery.

## V. THE COURT ABUSED ITS DISCRETION BY NOT INCREASING PLAINTIFFS' AWARD OF DEFENDANTS' PROFITS

Disgorgement of profits addresses a number of remedial aims, i.e., an approximation of lost sales, to account for damage to goodwill, to cure unjust enrichment, and to deter future infringement. 15 U.S.C. § 1117(a)(3) authorizes courts to adjust awards of profits when disgorgement does not meet these aims. "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case."[3] The court's profit award must be increased to adequately compensate Plaintiffs under the circumstances of this case and to deter Defendants from future infringement by making their infringement unprofitable.

First, the award fails to take into account the damage to Plaintiffs caused by Defendants' sale of Bob Marley products in mass retailers. Plaintiffs intended to enter the mass market at a later date on their own terms, but Defendants' sale of infringing merchandise forced Plaintiffs to scrap their plans in order to seize this

---

[3]    AVELA cites to *Faberge, Inc. v. Saxony Prods., Inc.* for the proposition that "willful infringement does not suffice to invoke the court's power to correct inadequate recovery." 605 F.2d 426, 429 (9th Cir. 1979). *Faberge* does not stand

market unlawfully taken from them.  (ER 496-498, 467-468, 418-419.)  Further,

Plaintiffs were not allowed to enter the mass market in the lead position but,

instead, were forced to enter in Defendants' wake.  *See Nat'l Steel Car, Ltd. v.

Canadian Pac. Ry. Co.*, 254 F. Supp.2d 527, 575 (E.D. Pa. 2003) ("Whenever a

new product is introduced to the market, the company that introduced it first has a

first to market advantage").  These harms are properly remedied by an increase in

profits.  *See ALPO Petfoods Inc. v. Ralston Purina Co.*, 778 F. Supp. 555, 564-65

(D.D.C. 1991) ("In determining whether an award is adequate this Court considers

. . . the **systemic distortion** which the wrongdoer's conduct has upon the particular

product market in which the plaintiff must compete in the future . . . [the

infringing] campaign was an affront to the market as a whole, cementing the

dominance of a single company while permanently damaging the ability of any

competitor or competitors to challenge for the lead position.  [Plaintiff's] actual

lost profits based upon this one instance of misconduct are clearly inadequate to

account for this distortion of its market.") (emphasis added.)

Second, the award does not account for the reputational damage Plaintiffs

suffered having the market flooded with cheap Bob Marley merchandise that did

not meet their quality control standards.  Contrary to Defendants' claim that

---

for anything remotely close to this proposition, which is at odds with the court's
authority, pursuant to 15 U.S.C. § 1117(a)(3), to correct inadequate recovery.

Plaintiffs have not presented evidence of reputational damage, Doreen Crujeiras testified that the Marley family was "embarrass[ed]" by its association with Defendants' inferior product. (ER 489.) Scott Holroyd of AVELA licensee Balzout testified as to the thinner, cheaper quality and inferior design work for t-shirts sold at Defendants' price point as compared to Plaintiffs' products. (Supp. ER 16.) Although Defendants point to an alleged lack of evidence of complaints about the quality of their products, it is well established that consumers rarely spend the time and energy necessary to lodge complaints to faceless corporations about inexpensive products, such as Defendants' t-shirts. *See AmBRIT Inc. v. Kraft Inc.*, 812 F.2d 1531, 1544 (11th Cir. 1986). Courts have the discretion to increase damages because it is difficult for plaintiffs to obtain certain types of evidence, such as evidence of reputational damage. *See Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 109 (2d Cir. 1988) (reviewing legislative history of Lanham Act which revealed an intent that "the provision to increase or decrease recovery based on an infringer's profits was simply a recognition of the problems of proof facing plaintiffs.")

Third, the award does not account for earnings AVELA shielded from disclosure without justification, including revenue from domestic and foreign licensees. (ER 180-181, 225.) Increased profits are often awarded to account for imprecise accountings resulting from the infringer's malfeasance. *See Boston*

-17-

*Professional Hockey v. Dallas Cap & Emblem Manufacturing, Inc.*, 597 F.2d 71, 77 (5th Cir. 1979).

Fourth, absent an increase, the profits award does not deter Defendants from future infringement. *See Skydive Arizona Inc. v. Quattrocchi*, 673 F.3d 1105, 1114-15 (9th Cir. 2012) (distinguishing between deterrence, which is a proper motivation for increasing profits, and punishment, which is not); *Maier*, 390 F.2d at 123 (relief should center on making any violations of the Lanham Act unprofitable to the infringing party.) If only their profits are disgorged, JEM and Freeze will continue their course of conscious disregard of the rights of others based on their blind reliance on indemnification agreements. JEM and Freeze have no economic motivation to change. They can continue to enter license agreements without expending resources to perform due diligence; at best, they are not pursued for infringement, and at worst, they gain market share and exposure. *See Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 588 (7th Cir. 1989) ("Treble damages are a particularly suitable remedy in cases where surreptitious violations are possible, for in such cases simple damages (or profits) will under-deter; the violator will know that he won't be caught every time, and merely confiscating his profits in the cases in which he is caught will leave him without net profits from infringement.")

AVELA misleads the Court by arguing that Plaintiffs are seeking an increased profit award as an approximation of the "'hundreds of millions in

unlicensed sales' of Marley products that have caused the market to become flooded with his image." (AVELA's Third Brief on Cross-Appeal, p. 78.) These accusations are not only irrelevant to Defendants' profits, but also lack evidentiary support. Defendants did not produce any evidence at trial of unauthorized third party merchandise or any other evidence suggesting that due to unauthorized use, Bob Marley's identity had been divested of its trademark-like significance. The evidence AVELA relies on in support of unauthorized third party use is an article from the Los Angeles Times (AVELA's ER 539-40), which, contrary to AVELA's misleading characterization of it in its Excerpts of Record, was never stipulated or entered into evidence at trial. Furthermore, the article is inadmissible hearsay as it is used by AVELA for the truth of the matter asserted.

## VI. THE COURT ERRED BY DENYING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AS TO JEM AND FREEZE

### A. The Court Correctly Determined that Plaintiffs Were the Prevailing Party and the Case Was Exceptional

A court may award attorneys' fees to the prevailing party under the Lanham Act in "exceptional" cases. 15 U.S.C. § 1117(a). The court correctly determined that Plaintiffs were the prevailing party and the case was exceptional as to JEM and Freeze. (Freeze incorrectly states the court did not find the case exceptional as to it; the court did, but erroneously decided not to include Freeze as a party to the fee award.) The court did not merely convert the jury finding of willfulness as to

-19-

all Defendants, including JEM and Freeze, into a finding of exceptionality. *C.f.*

*Watec Co.v. Liu*, 403 F.3d 645, 656-57 (9th Cir. 2005) (fee award vacated because

court merely relied on jury's finding of willfulness). Instead, the court expressly

agreed with and adopted the jury's finding of willfulness, holding that "[t]he

evidence was sufficient to support the jury's finding of willfulness as to all

defendants." (ER 7.) *See Gracie v. Gracie*, 217 F.3d 1060, 1068-69 (9th Cir.

2000) (finding of exceptionality "flows quite naturally from the jury's finding of

willful infringement and the legal standard for 'exceptional cases' under [15

U.S.C.] § 1117" where jury was properly instructed on willfulness.) JEM itself

admits that "willful infringement is one of the bases upon which a case may be

found exceptional." (JEM's Third Brief on Cross-Appeal, p. 20.)

### B. The Court Abused its Discretion by Holding that Certain Factors Mitigated Against a Fee Award As to JEM And Freeze

Despite its finding of exceptionality as to all Defendants, the court held that

certain factors weighed against assessing attorneys' fees against JEM and Freeze.

This was an abuse of discretion. The factors taken into consideration by the court

should have, at most, resulted in an adjustment into the amount of fees assessed as

to JEM and Freeze, not the complete elimination of the assessment.

### 1. Attorneys' Fees Should Be Assessed Against JEM

None of the factors cited by the court as a reason to exclude JEM from the

attorneys' fees award is supported by the law or the evidence. First, the court

found that the "evidence was sufficient to support the jury's finding of willfulness."[4]  (ER 7-8.)  The record shows that JEM knew that a precondition of using a celebrity's image was entering "a license agreement with the celebrity's estate" (ER 286), but chose to indiscriminately – and without due diligence – rely on its indemnification agreement with AVELA despite the absence of an agreement between AVELA and Fifty-Six Hope Road (owner of the Bob Marley rights).[5]  JEM neither conducted due diligence nor stopped selling the infringing products even after it received communications from retailers questioning its rights.  (ER 295-96, 400-403, 411, 661.)  JEM's intent to deceive also should be inferred from AVELA's and JEM's collaboration on an infringing t-shirt very similar to one of Plaintiff's longest-selling t-shirts and JEM's use of non-Rabanne images on its shirts.  (ER 900; Supp. ER 6, 12-13.)  Further, JEM's actions resulted

---

[4]    The court relied on a First Circuit case (*Tamko Roofing Products, Inc. v. Ideal Roofing Company, Ltd.*, 282 F.3d 23, 32-33 (1st Cir. 2002)), not a Ninth Circuit case, for the proposition that a defendant's intent to deceive the public and the extent of a plaintiff's actual damage are relevant to the issue of attorneys' fees. In *Tamko*, these factors were considered as to the issue of "exceptionality."  In this case, there is no question as to "exceptionality."

[5]    JEM's (and Freeze's) business models are built upon blindly relying on indemnification agreements.  Institutionalized willfulness weighs in favor of an assessment of attorneys' fees.  *See T-Mobile USA Inc. v. Terry*, 862 F. Supp.2d 1121, 1135 (W.D. Wash. 2012) ("Defendant's entire business model is predicated on the unauthorized and willful exploitation of [plaintiff's] Marks"; this factor weighed in favor of awarding attorneys' fees.)

in significant actual damage, actual confusion, and reputational harm to Plaintiffs. There was substantial evidence of JEM's intent.

Second, Plaintiffs' receipt of other "substantial" relief in the form of a permanent injunction and a profits award against JEM does not weigh against a fee award. JEM does not identify any authority supporting this counterintuitive position. Rather, such awards weigh in favor of a fee award. An award of profits or injunctive relief indicate that Plaintiffs were the prevailing party, a necessary condition for receiving attorneys' fees. Likewise, in *Trafficschool.com, Inc. v. Edriver Inc.*, which the court cited, the plaintiff's *failure* to recover monetary relief weighed against an award of attorneys' fees, but its receipt of injunctive relief weighed in favor it. 653 F.3d 820, 832 (9th Cir. 2011) ("the court may take plaintiff's failure to recover damages into account when exercising its discretion to award fees, but it must also consider that plaintiffs obtained a judgment and an injunction that ameliorate a serious public harm.") Also, profits, injunctive relief, and attorneys' fees, respectively, are fundamentally different types of relief remedying different injuries.

Third, even if true, JEM's "relatively lower culpability as compared to AVELA" (ER 8) is not a sufficient basis for relieving JEM from a fee award. Given the degree of AVELA's culpability, JEM's "relatively lower culpability" is still sufficiently high to support a award. Just as importantly, neither precedent nor

reason support that the relative culpability of multiple infringers is relevant to assessing attorneys' fees as to each infringer (as opposed to, say, the apportionment of fees among infringers based on their culpability).

Fourth, the Court does not identify what "novel legal questions presented in this case" (ER 8) justify the denial of a fee award as to JEM, particularly given that identical legal questions were answered against AVELA.

Fifth, the court erred to the extent it based its refusal to assess attorneys' fees against JEM on the fact that Plaintiffs "only" prevailed on one Lanham Act claim. Again, Plaintiffs only prevailed on one Lanham Act claim against AVELA. Furthermore, the court accounted for this by apportioning Plaintiffs' attorneys' fees against AVELA between the Lanham Act claim and other claims.

JEM's citation of *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 2011 U.S. Dist. LEXIS 107083 (W.D. Wash. 2011) (*Hendrix I*), as support for the court's decision on attorneys' fees is misplaced. This Court recently reversed this decision and, specifically, the *Hendrix* court's holding as to the plaintiff's entitlement to attorneys' fees. *See Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 2014 U.S. App. LEXIS 1822, *21 (9th Cir. 2014) ("We vacate the fee award and remand the district court's reconsideration because many of the factors on which the district court based its attorney fee decision have now changed.") Aside from its reversal, the facts in *Hendrix* preclude its application to

this case. Contrary to JEM's contention otherwise, *Hendrix* is a trademark infringement case, not a false association case based on the unauthorized use of a celebrity's identity or persona. Although the trial court opinion in *Hendrix* notes that the plaintiffs' claim for "false designation of origin" was dismissed, it does not identify the theory of or facts supporting the claim or the reason for dismissal, other than to say that it was "[f]or unrelated reasons" to those underlying the remainder of the court's summary judgment order. *Hendrix I*, 2011 U.S. Dist. at *4.

Finally, Ninth Circuit courts have consistently awarded attorneys' fees in Lanham Act cases based on the unauthorized and confusing commercial use of one's identity and persona. *See Roth v. Naturally Vitamin Supplements, Inc.*, 2007 U.S. Dist. LEXIS 49379, *19 (D. Ariz. 2007) (defendant "knowingly, intentionally, deliberately, and repeatedly linked Roth's image, statements, and persona with its own products, for the purpose of creating the false impression that Roth was endorsing its product"); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1111-12 (9th Cir. 1992) (singer Tom Waits awarded his attorneys' fees expended in Lanham Act action for unauthorized use of his voice.)

### 2.    Attorneys' Fees Should Be Assessed Against Freeze

All of the reasons stated above as to why attorneys' fees should be assessed against JEM apply to Freeze. In fact, the argument for a fee award against Freeze

-24-

is even stronger than that against JEM.  The court found that Freeze is more culpable than JEM and that ample evidence supports a finding that Freeze intended to confuse consumers.  Freeze was specifically put on notice by Plaintiffs of their rights in Bob Marley, promised not to use Bob Marley's image, but commenced its infringement anyway.  Further, Freeze persisted infringing even after receiving a cease and desist letter from Plaintiffs.

Nevertheless, and in reliance on *Trafficschool.com* and *Saint John's Organic Farm v. Gem Cnty. Mosquito Abatement Dist.*, 574 F.3d 1054 (9th Cir. 2009), the trial court declined to award fees against Freeze simply because Freeze generated less revenue and profit from its infringement than AVELA or JEM.  This is error and a misapplication of the precedent.[6]  In *Saint John's*, this Court held that the nature and quality of relief won relates to determining prevailing party status and the <u>amount</u> of attorneys' fees awarded, not <u>whether</u> attorneys' fees should be awarded.  *Id*. at 1059-60 ("while the nature and quality of relief may affect the amount of the fees awarded, an extremely small amount of relief is sufficient to confer prevailing party status"; remanded for refusal to award attorneys' fees to plaintiff who obtained nominal damages.)  In *Trafficschool.com*, this Court held

---

[6]     The court's reasoning is also internally inconsistent.  The court cannot simultaneously hold that the larger and smaller size of the profit awards against JEM and Freeze, respectively, both weigh against an assessment of attorneys' fees. Instead, both profit awards weigh towards an assessment of fees.

that the trial court abused its discretion by refusing to award fees to the prevailing plaintiff who had obtained an injunction but not any monetary relief. *Id.* at 832.

This case presents an even more compelling case for reversal as to attorneys' fees than the circumstances present in *Saint John's* and *Trafficschool.com*. Plaintiffs obtained a permanent injunction against Freeze and – unlike the plaintiffs in *Saint John's* and *Trafficschool.com* who, respectively, obtained nominal and no damages – Plaintiffs have obtained a complete disgorgement of Freeze's profits. That Freeze's profits were less than those earned and disgorged by AVELA and JEM "may affect the amount of the fees awarded" as to Freeze (*Saint John's*, 574 F.3d at 1059-60), but should not bar a fee award. It would be reasonable and within the court's discretion to apportion a certain amount of Plaintiffs' attorneys' fees to Freeze based on its lower amount of profits; it is unreasonable and an abuse of discretion to deny the award altogether.

## VII. THE COURT'S ENTRY OF JUDGMENT AS A MATTER OF LAW ON PUNITIVE DAMAGES WAS ERRONEOUS

First, the standard for reviewing the grant of a motion for judgment as a matter of law ("JMOL") is *de novo*, not abuse of discretion as AVELA contends. *See Saman v. Robbins*, 173 F.3d 1150, 1155 (9th Cir. 1999); *Acosta v. City and County of San Francisco*, 83 F.3d 1143, 1145 (9th Cir. 1996). The case relied on by AVELA – *Browning-Ferris Indus v. Kelco Disposal* – addresses the standard for reviewing a court's refusal to grant a motion for new trial under Fed.R.Civ.P.

59. 492 U.S. 257, 278-79, 109 S.Ct. 2902 (1989). An abuse of discretion standard

is clearly inappropriate here, as a court considering a JMOL has little discretion

but, instead, must construe the evidence "in the light most favorable to the non-

moving party." *Acosta*, 83 F.3d at 1145.

Second, the intent element of Plaintiffs' tort claim – intent to harm Plaintiffs

by preventing the prospective business relationship – is clearly encompassed

within the conduct sufficient to establish "malice" under NRS § 42.005.1, i.e.,

"conduct which is intended to injure a person or despicable conduct which is

engaged in with a conscious disregard of the rights or safety of others." (emphasis

added.) It stands to reason that if Plaintiffs could establish the former, they

necessarily could establish the latter. This conclusion is not upset by the different

standards of proof Plaintiffs bore to establish the tort claim and punitive damages,

i.e. preponderance of the evidence and clear and convincing evidence, respectively.

These standards relate to the persuasiveness, not the quantum, of evidence. *See*

Fleming James Jr., *Burdens of Proof*, 47 Va. L. Rev. 51, 53 (1961) (burden of

persuasion refers "not to the number of witnesses or quantity of evidence but to the

convincing force of the evidence.") Further, the court had already found during

trial that Plaintiffs had made a *prima facie* case on punitive damages sufficient to

go to the jury. (ER 331-32.)

-27-

Third, the issue presented on appeal is not, as AVELA frames it, whether Plaintiffs are entitled to punitive damages but, rather, whether Plaintiffs are entitled to a jury determination of punitive damages. Holding that Plaintiffs are entitled a jury determination of punitive damages is not tantamount to entitling every intentional tort plaintiff to punitive damages. Rather, to prevail on a claim for punitive damages, a plaintiff still bears the burden of producing evidence establishing an intentional tort, survive a Fed.R.Civ.P. 50(a) motion as to the sufficiency thereof, and obtain a jury verdict specifically as to punitive damages.

Viewing the evidence in the light most favorable to Plaintiffs, the jury had a sufficient evidentiary basis to find, by clear and convincing evidence, that AVELA engaged in conduct intended to injure Plaintiffs. AVELA knew of Plaintiffs' rights in Bob Marley, their exploitation thereof, and their intention of expanding to sales to mass merchandise stores such as Wal-Mart, but undercut Plaintiffs' expansion plans by selling infringing merchandise to these retailers. (ER 393, 467-68; Supp. ER 2-5, 18-20.) AVELA sold infringing merchandise to Wet Seal, C&D Visionary, Kohl's, and JC Penney, intentionally undercutting Plaintiffs' higher prices and ousting them from the retailers' shelves or forcing Plaintiffs to reduce their prices to stay in said retailers. (ER 438-39; Supp. ER 8-10, 14.) Additionally, Mr. Rabanne testified to Valencia's specific intent to harm Plaintiffs by flooding the market with Bob Marley merchandise in an attempt to devalue

-28-

Plaintiffs' intellectual property and fund his defense with the proceeds. (ER 367-68.) These facts, viewed in the light most favorable to Plaintiffs, provide a sufficient evidentiary basis entitling Plaintiffs to punitive damages.

## VIII. CONCLUSION

For the foregoing reasons, Plaintiffs seek the following relief on cross-appeal:

- Remand to the trial court for trial on Plaintiffs' right of publicity claim;

- Remand to the trial court for a jury determination of the amount of Defendants' profits to which Plaintiffs are entitled. Short of this, the Court should reverse the trial court's order granting JEM's deductions of costs from its gross revenue, and should direct the trial court to award Plaintiffs JEM's gross revenue and increased profits from all Defendants;

- Reversal of the order denying Plaintiffs' motion for attorneys' fees as to JEM and Freeze; and

/ / /


/ / /

- Remand to the trial court for a jury determination of punitive damages on Plaintiffs' tortious interference claim.

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Dated:  March 20, 2014          By: _____ /s/ Jill M. Pietrini _____
                                         Jill M. Pietrini
                                         Paul A. Bost
                                   Attorneys for Appellees and
                                      Counter-Appellants

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) and 32(a)(7)(B) because this brief contains 6,973 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Dated:  March 20, 2014        By: _____ /s/ Jill M. Pietrini _____
Jill M. Pietrini
Paul A. Bost
Attorneys for Appellees and
Counter-Appellants

-31-

## <u>PROOF OF SERVICE</u>

I, Xavier Maurice, declare as follows:

I am employed in Los Angeles County, Los Angeles, California.  I am over the age of eighteen years and not a party to this action.  My business address is Sheppard, Mullin, Richter & Hampton, LLP, 1901 Avenue of the Stars, Suite 1600, Los Angeles, CA  90067-6055.  On March 20, 2014, I caused the forgoing document:

**PLAINTIFFS-APPELLEES/CROSS APPELLANTS FIFTY-SIX HOPE ROAD MUSIC LTD.'S AND ZION ROOTSWEAR, LLC'S FOURTH BRIEF ON CROSS APPEAL**

including any and all exhibits, to be filed with the Clerk of the Court for the United States Court of Appeal for the Ninth Circuit using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made and that the foregoing is true and correct.

Executed on March 20, 2014, at Los Angeles, California.

_/s/Xavier Maurice_____
Xavier Maurice

SMRH:418410622.1

-32-